Argued June 5, affirmed November 5, 1969

# WEATHERS et ux, *Appellants, v.* ICOA LIFE INSURANCE COMPANY, *Respondent.*

460 P. 2d 361

*Gale K. Powell,* Bend, argued the cause and filed briefs for appellants.

*Thomas W. Churchill,* Salem, argued the cause for respondent. On the brief were McKinney and Churchill and Charles H. S. Howe, Salem.

362

Before Sloan, Presiding Justice, and O'Connell, Goodwin, Denecke and Holman, Justices.

DENECKE, J.

Plaintiffs brought suit for rescission of life insurance contracts and for the return of the premiums paid. The ground alleged was misrepresentation. The trial court, sitting in equity, found that the defendant had not misrepresented the policies. Plaintiffs appeal.

The selling agent who allegedly made the misrepresentations did not testify. Defendant's witnesses testified that he could not be found. For this reason there was no testimony directly contradicting plaintiffs' testimony of the alleged misrepresentations. However, the testimony of plaintiffs was quite indefinite and, in some instances, contradictory.

The first charge of misrepresentation made in the complaint is that the salesman represented: "That 80 per cent of the profits of the Defendant company would be divided among the owners of said policies and 20% of the profits would go to the stockholders of the Defendant company." Defendant introduced evidence of a resolution of defendant's Board of Directors stating: "Resolved: That it is the intent of the company to give participating policyholders 80% of the profits realized on participating policies as a class, and the company will set up and maintain the necessary separation of accounts to effectuate the purpose."

█ Plaintiffs contend that the agent's statement was a misrepresentation because he represented that 80% of *all* the profits would go to holders of policies, whereas the defendant only provided that 80% of the profits realized from participating policies, such as

plaintiffs purchased, would go to participating policy-holders. Plaintiffs also contend that the facts were misrepresented because the guarantee of a distribution of 80% of the profits was not perpetual as a future Board of Directors could change the distribution.

Mrs. Weathers testified:

"Q What fantastic amounts did he refer to?
"A Well, there was 80 percent of all the—

"Q Of all the what?
"A The — well, the money that they would pay.

"Q All right. What is the 80 percent of?
"A The dividends. I really don't know."

Mr. Weathers testified:

"Q Now, did he indicate that there would be a percentage of the profits from this policy divided among the policy holders?
"A Yes. He said there would be well, 80 percent of the profits of the company would be divided among the people that had this special policy.

"Q Now, would it be 80 percent of the profits from this particular group of policies?
"A That's the way I understood it, yes."

We find that the foregoing testimony does not constitute proof of misrepresentation. Mrs. Weathers testified she didn't know what the representations were and Mr. Weathers testified to a representation which was apparently consistent with the resolution of the defendant's Board of Directors.

The testimony in support of the other allegations of misrepresentation was similarly indefinite.

As this suit is in equity, we try it de novo. "Nevertheless, the determination of the trial judge who saw the witnesses and heard them testify is entitled to great weight where the testimony or the inferences to be drawn from it are in dispute." *Stacy v. Smith*, 244 Or 336, 340, 418 P2d 32 (1966). (Also a suit for rescission.) Because of the equivocal nature of the testimony of plaintiffs, we conclude that the trial court was correct in its finding that there was no clear and convincing evidence of misrepresentation and we similarly so find.

Affirmed.