Argued and submitted September 24, 1979, reversed
February 11, reconsideration denied March 20,
petition for review denied May 13, 1980 (289 Or 107)

MYERS, et ux,
*Respondents,*

*v.*

MHI INVESTMENTS, INC., et al,
*Appellants.*

(No. 101,824, CA 13032)

606 P2d 652

William C. Crothers, Jr., Salem, argued the cause and filed the briefs for appellants.

Roger W. Gracey, Silverton, argued the cause for the respondents. With him on the brief was Gracey and Roeschlaub, Silverton.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

**GILLETTE, J.**

Defendant appeals from the trial court's order allowing general damages, rescission, and punitive damages after a finding of fraud and violation of the Unfair Trade Practices Act, ORS 646.605 *et seq.* We reverse.

Plaintiffs, husband and wife, sued defendants MHI Investments and Zeeb, the corporate president and an employee, for misrepresentation in the sale of a mobile home. Also named as defendants were the original owners of the home, the Clarks.[1] Plaintiffs alleged that during the course of the sale, MHI and Zeeb represented:

"1.   To plaintiffs that defendants MHI Investments, Inc. and Stanley M. Zeeb were acting as a broker between the buyers and sellers and that the finalized transaction was a sale between those parties.

"2.   To plaintiffs that defendants Vernon Clark and Pearl Clark were the owners of the above described mobile home.

"3.   To Vernon Clark and Pearl Clark that the maximum price plaintiffs would pay was $9,000 and that the full price paid by plaintiffs was the sum of $9,000.

"4.   To plaintiffs that the minimum price sellers would accept was $11,950 and that the price paid to the benefit of sellers was $11,950."

The complaint alleged three causes of action. The first alleged a wilful violation of certain sections of the Unlawful Trade Practices Act. Plaintiff asked for general damages of $2,950, as the difference between the fair market value of the mobile home as represented by defendant and its true value, and punitive damages. Count two stated a cause of action for common law fraud and asked for general and punitive damages. Count three asked for rescission of the contract.

---

[1] All parties agreed and the court found that the Clarks were not liable to the plaintiffs in any manner.

After trial to the court, the trial judge entered specific findings of fact and conclusions of law. As a matter of law the court found:

"1. The statute of limitations under ORS chapter 646 was tolled during the investigation. (The plaintiffs had filed a complaint with the Department of Justice's Consumer Division in this matter and an investigation was conducted on their behalf.);

"2. Defendants, MHI and Zeeb, were agents of the Clarks;

"3. Plaintiffs have sustained their burden of proof that MHI and Zeeb violated ORS 646, by wilfully and recklessly making misrepresentations of material facts to defraud and mislead plaintiffs upon which plaintiffs justifiably relied and which acted as a material inducement to plaintiffs to purchase the home and that the purchase should be rescinded;

Plaintiffs were awarded general damages on the first count, granted rescission of the contract on the third count and awarded punitve damages on all three counts.

Defendants-appellants raise a number of assignments of error. There are, however, two central issues which dispose of this appeal. The first is whether the Unlawful Trade Practices Act cause of action was barred by the statute of limitations. The second is whether a case for common law fraud has been established.

Unlawful Trade Practice Act actions must be brought within a year of the discovery of the unlawful method, act or practice, ORS 646.638(5).[2] However, that statute also provides for a tolling of the one year

_____

[2] ORS 646.638, in pertinent part, states:

"(5) Actions brought under this section shall be commenced within one year from the discovery of the unlawful method, act or practice. However, whenever any complaint is filed by a prosecuting attorney to prevent, restrain or punish violations of ORS 646.608, running of the statute of limitations with respect to every private right of action under this section and based in while or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof."

period where a complaint is filed in court by a prosecuting attorney.

The written purchase agreement for the sale of the mobile home was entered into on August 19, 1975. Plaintiffs filed a complaint with the Department of Justice's Consumer Protection Division on June 15, 1976. The Consumer Protection Division conducted an investigation and sent a notice of an unlawful trade practices violation to the defendants. However, a formal complaint was never filed by the Department in court. The original complaint in this proceeding was not filed until August 19, 1977.

The wording of the statute is clear; it applies only to the situation where a complaint has been filed in court by a prosecuting attorney. We cannot ignore the plain meaning of unambigious words in a statute. *Davis v. Wasco IED,* 286 Or 261, 266, 593 P2d 1152 (1979). The unlawful trade practices count in plaintiff's complaint is barred by the statute of limitations.

In addition to the judgment under the Unfair Trade Practices Acts, the court also granted rescission of the contract. A suit for recission of a contract is a suit in equity; thus our review is de novo. *See Weathers et ux v. ICOA Life Insurance Company,* 254 Or 361, 460 P2d 361 (1969); *Lanners v. Whitney,* 247 Or 223, 428 P2d 398 (1967); *Stacy v. Smith,* 244 Or 336, 418 P2d 32 (1966).

As noted earlier, the other form of relief granted by the trial court was rescission, an equitable remedy. The rescission was based upon the defendants' alleged fraud. The trial court entered specific findings of fact which encompasses all the necessary elements of common law fraud. However, we are not bound by those findings. ORS 19.125(3).[3] "The trial court's findings while persuasive are not binding on this court, and it is the appellate court's function * * * to arrive at its own

---

[3] ORS 19.125 (3) provides: "Upon an appeal from a decree in a suit in equity, the Court of Appeals shall try the cause anew upon the record."

[471]

conclusion." *Clatsop County v. Morgan,* 19 Or App 173, 176, 526 P2d 1393 (1974). *See also Lanners v. Whitney, supra,* at 227.

The plaintiff alleged misrepresentation as to ownership and as to the price the Clarks were asking and would receive. Mr. and Mrs. Myers both testified that they believed that they were buying the mobile home from the Clarks through MHI. According to their testimony, after showing them the mobile home, Zeeb told them that the Clarks were asking $13,000 for it. The plaintiffs indicated the price was too high for them and Zeeb stated that he would try to talk the Clarks down to $11,950. On that basis they signed a purchase agreement. Plaintiffs' testimony indicates that at all times Zeeb represented to them that the Clarks would get the full amount. In fact, the Clarks only received $9,000 and MHI kept the rest pursuant to its separate agreement with the Clarks.

The record contains evidence which disputes the plaintiffs' testimony. The trial court, however, believed the Myers. The court found that the defendants represented to the plaintiffs that the Clarks were the owners of the mobile home, that the minimum price the sellers would accept was $11,950 and that this was the price paid to the Clarks. While we are not bound by those findings, we nevertheless "give consideration to the trial court's opportunity to see and hear witnesses, particularly when the ultimate issues hinge on witnesses' credibility, character and personality." *State ex rel Juvenile Department v. Maves,* 33 Or App 411, 416, 576 P2d 826 (1978). We follow that rule here and accept the trial court's appraisal of the Myers' testimony.

In order to establish actionable fraud, however, the plaintiff must prove the following elements:

"1. A representation;
"2. Its falsity;
"3. Its materiality;

"4. The speaker's knowledge of its falsity or ignorance of its truth;

"5. His intent that it should be acted on by the person and in the manner reasonably contemplated;

"6. The hearer's ignorance of its falsity;

"7. His reliance on its truth;

"8. His right to rely thereon;

"9. His consequent and proximate injury."

*Webb v. Clark,* 274 Or 387, 391, 546 P2d 1078 (1976).

Without deciding whether the plaintiff established all of the other necessary elements of fraud, we conclude that the misrepresentations were not material. "A misrepresentation is material where it would be likely to affect the conduct of a reasonable man with reference to a transaction with another person." *Millikin v. Green,* 283 Or 283, 285, 583 P2d 548 (1978). We fail to see how, under these circumstances, a misrepresentation as to ownership and the amount the claimed owner would receive can be said to be material to the Myers' decision to purchase.

Plaintiffs testified that they relied upon Zeeb's statement of value in purchasing the mobile home. They also testified that Zeeb told them the purchase was a good deal and that, when they were ready, he would sell it for them without their losing any money. While either or both of these statements might be grounds for relief in certain cases,[4] nowhere in their complaint do plaintiffs here base their claim of fraud on a misrepresentation as to value or a promise to repurchase the mobile home. A decree could have been rendered on either of those grounds. *Hurlbutt v. Hurlbutt,* 36 Or App 721, 725, 585 P2d 724 (1978).

The seller of goods sets their price. A buyer is either willing to pay that price or not. We cannot see why a

---

[4] *See Peterson v. Auvel,* 275 Or 633, 552 P2d 538 (1976) and *Holland v. Lentz,* 239 Or 332, 397 P2d 787 (1964) as to when statements of opinion commendatory of the thing the individual is trying to sell are actionable, and *Webb v. Clark,* 274 Or 387, 546 P2d 1078 (1976) as to when fraud can be predicated upon a promise to do something in the future.

[473]

reasonable man would be concerned as to who ultimately was to receive the payment or some portion of it. As long as the quality and condition of the goods are as represented, ownership and the amount the alleged owner is to receive are immaterial.

Reversed.